UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SEAFLEX, INC. D/B/A FLEXIBLE LIFELINE SYTEMS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4-07-cv-1681 |
| FALL PROTECTION SYSTEMS, INC. | § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Plaintiff has filed a Motion for Leave to Amend Complaint asking the Court to add Defendant FPS Investments, LLC ("Investments") to the lawsuit. Defendant Fall Protection Systems, Inc. ("FPS") opposes Plaintiff's Motion, and has filed its own Motion to Dismiss or Transfer for Failure to Join an Indispensable Party.

For the reasons given below, Plaintiff's Motion for Leave to Amend (Docket No. 12) will be **DENIED**. Defendant's Motion to Dismiss or Transfer (Docket No. 14) will be **GRANTED**. The case will be **TRANSFERRED** to the District Court for the Eastern District of Missouri.

## I.   BACKGROUND

### A.   The Parties

Plaintiff Flexible Lifeline designs, manufactures, and sells fall systems to prevent workers from falling off of structures. Plaintiff is a Texas corporation headquartered in Houston, but also has offices throughout the country including one in St. Louis, Missouri.

Investments, the party that Plaintiff seeks to add to this lawsuit, is the owner, by assignment, of all right, title, and interest in and to two patents issued to Daniel Morhaus

1

in 2001.[1]   Investments is a limited liability company existing under the laws of the State of Missouri with a principal office in Chesterfield, Missouri.  Investments has no direct contacts with Texas.  For example, Investments is not licensed to do business in Texas nor does it manufacture, sell, advertise or purchase goods in Texas.  Neither does the company have any property, bank account, office, or telephone listing in Texas.

Investments has, however, entered into a licensing agreement with Defendant FPS granting FPS the right, among other things, to make, use and sell the 023 and 904 Patents owned by Investments.[2]  The agreement was negotiated and executed in Missouri, is governed by the laws of Missouri, and does not explicitly require any act to be done in the State of Texas.   The agreement does not grant Investments the right to exercise any control over FPS' business activities.

FPS is a corporation existing under the laws of Illinois with its principal place of business in Hazlewood, Missouri.  Like Plaintiff, FPS also designs, manufactures, and sells fall systems.  Plaintiff asserts, and FPS does not deny, that FPS conducts business in Texas through, *inter alia*, the sale of its products and services.

FPS and Investments are separate entities that maintain separate bank accounts, checkbooks, financial statements, books and records and file separate tax returns.  The companies do, however, have common owners, and these owners share some responsibility for managing both companies.  The companies also apparently share an address in Missouri.

**B.    The Lawsuit**

---

[1] The patents at issue are: United States Patent D440,023 S (the "023 Patent") and United States Patent 6,269,904 B1 (the "904 Patent"), both entitled "Truss Style Trolley Beam for a Fall Protection System."
[2] The Court considers the specific provisions of the Agreement below.

On May 10, 2007, Defendant FPS sent a cease and desist letter alleging that a fall system installed by Plaintiff at a plant in Evansville, Illinois directly infringed the 023 and 924 Patents.[3]  (Pl.'s Mot. for Leave, Ex. 3.)  The letter demanded that Plaintiff remove the system from the plant and either cease manufacturing it or obtain a license from FPS.

Plaintiff subsequently filed suit against FPS seeking a declaratory judgment of patent non-infringement and alleging unfair competition and trademark infringement under 28 U.S.C. § 2201, 15 U.S.C. § 1125, and the laws of the State of Texas.  In its Complaint, Plaintiff named FPS as the sole Defendant.  Plaintiff acknowledges that FPS was not listed as the last recorded assignee of the patents, but explains that the Patent Office's records do not always reflect the most current assignee because the procedure to record an assignment is voluntary.  Plaintiff's belief that FPS was the owner or exclusive licensee of the subject patents was based, instead, on statements made by FPS' manager and FPS' cease and desist letter.  Only after Defendant filed its Original Answer denying that it is the owner or exclusive licensee of the patents at issue did Plaintiff realize the need to add Investments as a Defendant in this lawsuit.

Defendant FPS opposes Plaintiff's Motion to Amend, arguing that the Court does not have personal jurisdiction over Investments.  Defendant further maintains that, because Investments is an indispensable party, the Court must dismiss or transfer the case.

## II.    PERSONAL JURISDICTION

### A.    Standard

---

[3] Parties dispute whether the letter may also be attributed to Investments.

Personal jurisdiction in a declaratory judgment action for non-infringement of a patent is governed by the law of the Federal Circuit.  See, e.g., Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).  Because the Court is considering a Motion to Dismiss and will base its decision on "affidavits and other written materials in the absence of an evidentiary hearing," Plaintiff must make only a *prima facie* showing that the defendant is subject to personal jurisdiction.  Electronics For Imaging, Inc. v. Coyle  340 F.3d 1344, 1349 (Fed. Cir. 2003).  The Court must "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits [and other written materials] in the plaintiff's favor."  Id.

For the Court to exercise personal jurisdiction over a defendant, Plaintiff must show that jurisdiction is allowed under the Texas long-arm statute and that it comports with due process.  Pennington Seed, Inc. v. Produce Exchange No. 299,  457 F.3d 1334, 1343 (Fed. Cir. 2006).  Because the Texas Long Arm Statute is coextensive with the limitations of due process, Religious Tech. Ctr. v. Liebreich, 339 F.3d 369, 373 (5th Cir. 2003), personal jurisdiction is analyzed entirely within the framework of constitutional due process,  Pennington, 457 F.3d at 1343; Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed. Cir. 1995).

The Court therefore has personal jurisdiction over a defendant if it has minimum contacts with Texas "'such that it should reasonably anticipate being haled into court there.'"  Red Wing Shoe, 148 F.3d at 1359 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  If the Court determines that the defendant has "purposefully established minimum contacts with the state," the Court must then determine whether the assertion of personal jurisdiction "would comport with 'fair play

4

and substantial justice," <u>id.</u> (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476

(1985) (internal quotation marks removed)).  Even if a defendant does not have

substantial, continuous, and systematic contacts with the forum state justifying general

jurisdiction, the Court may still exercise specific jurisdiction over the defendant "if the

cause of action 'arises out of' or 'relates to' the defendant's in-state activity."

<u>Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc</u>.,  444 F.3d 1356, 1360

(Fed. Cir. 2006) (citing <u>Burger King</u>, 471 U.S. at 472-73).

      Under certain circumstances, a patent holding company may establish minimum

contacts with a state "by virtue of its relationship with its exclusive forum state licensee."

<u>Breckenridge Pharmaceutical</u>,  444 F.3d at 1366.  Summarizing the Federal Circuit's

approach, the <u>Breckenridge</u> court explained:

> The crux of the due process inquiry should focus first on whether the
> defendant has had contact with parties in the forum state beyond the
> sending of cease and desist letters or mere attempts to license the patent at
> issue there.  Where a defendant-licensor has a relationship with an
> exclusive licensee headquartered or doing business in the forum state, the
> inquiry requires close examination of the license agreement. In particular,
> our case law requires that the license agreement contemplate a relationship
> beyond royalty or cross-licensing payment, such as granting both parties
> the right to litigate infringement cases or granting the licensor the right to
> exercise control over the licensee's sales or marketing activities.

<u>Id.</u>

Defendant insists that the single most crucial factor that the Federal Circuit considers when finding jurisdiction based on a license is the exclusive nature of the licensing agreement. Defendant further maintains that a non-exclusive relationship with a licensee is insufficient to confer personal jurisdiction over the licensor.   Plaintiff, on the other hand, relying almost entirely on the Federal Circuit's decision in <u>Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.</u>, 142 F.3d 1266 (Fed. Cir. 1998), argues that the Court may exercise jurisdiction over a patent owner based on its overall relationship with its licensee, even if that relationship is non-exclusive.  Plaintiff acknowledges that <u>Dainippon</u> did, in fact, involve an exclusive license agreement, and the Court is aware of no Federal Circuit case finding jurisdiction based on Defendant's relationship with a non-exclusive licensee.  Nevertheless, Plaintiff contends that, when reversing the District Court's finding of no jurisdiction in <u>Dainippon</u>, the exclusive nature of the license was only one of several factors considered by the Circuit.  The "most revealing factor," contends Plaintiff, was the overall "intimate relationship" between the two companies.

<u>Dainippon</u> is a case involving a somewhat unique set of facts,[4] and the intimate relationship between the licensee and licensor in that case clearly played a role in the Circuit's decision that jurisdiction over the out-of-state patent holding company was reasonable and fair.  Nonetheless, the Circuit in <u>Dainnipon</u> addressed the question of whether jurisdiction was "reasonable and fair" only <u>after</u> determining that the out-of-state

---

[4] Most importantly, in <u>Dainippon</u>, the parent company:

    Incorporate[d] a holding company in another state, transfer[red] its patents to the holding company, arrange[d] to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten[ed] its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company.

Although Plaintiff rightly points out that the relationship between the companies in <u>Dainippon</u> and the parties in this case is similar, it is not identical.  There is no evidence that FPS exercises complete control over Investments or that Investments engaged in the same kind of scheme to avoid becoming a declaratory judgment defendant in Texas.

company had, in fact, established minimum contacts with the forum state. Id. at 1271.

When deciding the question of minimum contacts, the Circuit in Dainippon did not

deviate from the Circuit's usual approach:  namely, it determined that the out-of-state

defendant had purposefully directed its activities at residents of the forum by, *inter alia*,

issuing threats of infringement and by virtue of its exclusive license agreement with the

forum state patent operating company.[5]  Id.; see also Breckenridge Pharmaceutical 444

F.3d at 1366 ("[T]he defendant is subject to personal jurisdiction in the forum state by

virtue of its relationship with its exclusive forum state licensee if the license agreement,

for example, requires the defendant-licensor, and grants the licensee the right, to litigate

infringement claims." (citing Akro, 45 F.3d at 1546) (emphasis added)); Akro, 45 F.3d at

1543 (finding jurisdiction proper by virtue of a non-resident's exclusive licensing

agreement); Red Wing Shoe,148 F.3d at 1362 (refusing to find jurisdiction based on

Defendant's relationship with multiple non-exclusive licensees and distinguishing Akro

by explaining that the case "emphasized the exclusive nature of the license"); Genetic

Implant Systems v. Core-Vent Corp., 123 F.3d 1455, 1457-58 (Fed. Cir. 1997) (finding

jurisdiction was proper based on an exclusive distributorship agreement).  Thus,

Dainippon does not necessarily stand for the proposition that a defendant may establish

minimum contacts with a forum state by virtue of its overall relationship with an in-state

operating company even where the licensing agreement between the two companies is

non-exclusive. [6]

---

[5] The Circuit noted that, in addition to the threats and the exclusive licensing agreement, the out-of-state patent holding company had received "substantial licensing revenues" from the forum state operating company and had attempted to negotiate a sublicense with the Plaintiff in California.  Danippon, 142 F.3d at 1271.

[6]Requiring a license to be exclusive does not appear to rest on mere labels or formalities.  Instead, it seems that non-exclusive licenses do not usually create the kind of continuing obligations between the out-of-state patent owner and its licensee that exclusive licenses usually entail. The Federal Circuit's overall personal

**B.      Analysis**

Plaintiff does not argue that Investments has any direct contacts with the State of Texas.  Instead, Plaintiff maintains that FPS' cease and desist letter may be attributed to Investments and that Investments has established minimum contacts with Texas 1) by sending the letter, which included an offer to negotiate a license, to Plaintiff in Texas; and 2) by virtue of its relationship with FPS.

As explained above, jurisdiction is generally only proper based on a licensing agreement if the license is exclusive.  An exclusive licensee is one that has "received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1552 (Fed. Cir. 1995).  To determine whether a licensee holds an exclusive license, the Court must ascertain "the intent of the parties to the license as manifested by the terms of their agreement and examining the substance of the grant.  The use of the word 'exclusive' is not controlling; what matters is the substance of the arrangement." Textile Productions, Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998) (internal citations omitted).

---

jurisdiction jurisprudence might be read to hold that an out-of-state licensor can establish minimum contacts with a forum state by virtue of its non-exclusive licensing agreement as long as the agreement entails the same kind of continuing obligations present in cases involving an exclusive agreement.  See, e.g., Red Wing Shoe, 148 F.3d at 136 (refusing to find jurisdiction based on an out-of-state licensor's relationship with 34 non-exclusive licensees because the out-of-state licensor was not required "to be so nearly involved with its licensees as was the case with the exclusive licensee in Akro."); see also Breckenridge 444 F.3d at 1366 (noting that jurisdiction is improper where a defendant has licensed a patent to multiple non-exclusive licensees in the forum state "but does not, for example, exercise control over the licensee's sales activities and, instead, has no dealings with those licensees beyond the receipt of royalty income." (citing Red Wing Shoe, 148 F.3d at 1357-58)).  As explained below, however, even this generous reading of Federal Circuit precedent would not alter the outcome in this case.

The License Agreement between Investments and FPS explicitly states that it is non-exclusive,[7] (Pl.'s Sur-Reply to Mot. Dismiss, Ex. A, ¶ 2s), and Thomas Morhaus, a member of Investments, maintains in an affidavit that FPS is a non-exclusive licensee (Mot. Dismiss, Ex. A.).  Although the use of the word "non-exclusive" is not controlling, the Court finds no evidence to the contrary in the text of the agreement or other documents submitted by the parties.  There is no clear express or implied promise in the Agreement to exclude others from practicing the invention.  The Agreement does not oblige Investments to bring suit against infringers, see, e.g., Independent Wireless Telegraph Co. v. Radio Corporation of America, 269 U.S. 459, 469 (1926) ("Such exclusive licenses frequently contain express covenants by the patent owner and licensor to sue infringers, that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation."), nor does it grant FPS an unfettered right to indulge infringers.  Instead, the parties agree to notify one another of any possible infringement and Investments retains the option to initiate a lawsuit (Pl.'s Sur-Reply to Mot. Dismiss, Ex. A, ¶ 5.1, 5.2.)  The Agreement does purport to grant FPS the right to bring infringement actions with Investment's permission, a power that is generally only available to exclusive licensees.  Kalman v. The Berlyn Corp., 914 F. 2d 1473 (Fed. Cir. 1990) ("It is well settled that a non-exclusive licensee of a patent has no standing to sue for infringement.").   Nevertheless, an attempt to grant a licensee an independent right to sue does not, by itself, transform a non-exclusive license into an exclusive license.  See Textile Productions, 134 F.3d at 1485  (noting that a participation in litigation provision

---

[7] In briefing, Plaintiff stated that the July 13, 2007 License Agreement is a "true and correct copy" of the agreement between Investments and FPS, but called the Court's attention to the fact that the written agreement was, in fact, entered into two months after this lawsuit began.  Defendant claims that the July 13, 2007 agreement memorializes an informal agreement that previously existed between Investments and FPS.  At the

"does not show that Mead gave Textile an exclusive right to make the invention."). Furthermore, FPS may not sublicense or assign its rights without the express written consent of Investments. (Pl.'s Sur-Reply to Mot. Dismiss, Ex. A, ¶ 8.1). Thus, the licensing agreement between Investments and FPS, on its face, appears to be non-exclusive.

To further support the claim that the license agreement is non-exclusive, Defendant attempts to show that Investments has issued non-exclusive licenses to other entities in the past. (Def. Mot. Dismiss, Ex. A-3) As Plaintiff correctly maintains, however, the releases of claims submitted by Defendant as evidence of these licenses are simply settlements for past infringement and "do not in any way constitute a license to do something in the future."[8] See Rohn and Haas Co. v. Dawson Chemical Co., 634 F. Supp 1211, 1224 (S.D. Tex. 1986). The Court will not, therefore, consider these releases when deciding whether the agreement was exclusive. Nonetheless, just because Defendant has not presented evidence of other non-exclusive licensees does not compel the conclusion the parties intended the Agreement to be exclusive.

Although Plaintiff expressed to the Court in oral arguments that the agreement is a "de-facto exclusive licensing agreement," it has presented no actual evidence to contradict the text of the Agreement or the Morhaus affidavit.[9] Given the lack of any evidence to the contrary, the Court agrees with Defendant that FPS is a non-exclusive

---

[8] The text of the LeMar Release states: "This release shall be limited to this one system and shall not constitute a release from any claim for infringement arising from any further prosecution, or sale, of similar such systems in the future." The EEE agreement also seems to settle past infringement. Far from constituting a promise by Investments not to sue for future infringement, the release instead contains EEE's pledge to "refrain from making truss style fall protection systems disclosed and claimed in the FPS PATENTS."

[9] The Court notes that parties have entered into discovery and have served interrogatories and requests for production, and that Plaintiff has therefore have had an opportunity to inquire about the original informal agreement and the written agreement.

licensee.  As such, the Court may not exercise jurisdiction over Investments by virtue of its licensing agreement with FPS.

Plaintiff also argues that jurisdiction is proper over Investments because FPS is Investments' agent or because FPS has acted with apparent authority from Investments. Plaintiff does not attempt to argue, however, that all of FPS' business activities in Texas should be attributed to Investments based on agency or apparent authority.[10]  Instead, Plaintiff maintains that the Court should impute to Investments the threats made by FPS in the cease and desist letter and FPS' "attempt to negotiate" with Plaintiff.[11]

Even if the Court could impute FPS' actions to Investments, though, personal jurisdiction over Investments would still be improper because sending cease and desist letters and attempting to license a patent clearly do not establish minimum contacts with the forum state.  See Breckenridge Pharmacy, 444 F.3d at 1366 (explaining that the "crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there"); Red Wing Shoe, 148 F.3d at 1360-61 (explaining that cease and desist letters alone do not suffice to create personal jurisdiction even where those letters include an offer for a license).   Because sending cease and desist letters, standing alone, does not constitute the minimum contacts required by due

---

[10] Nor could Plaintiff prevail on such an argument given that there is no evidence that Investments exercises any control over FPS' business activities, see, e.g., Walker Ins. Services v. Bottle Rock Power Corp., 108 S.W.3d 538, 549 (Tex. App 2003) ("An essential element of the principal-agent relationship is the alleged principal's right to control the actions of the alleged agent."), or ever permitted FPS to carry out general business activities such as sales on its behalf, see West Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 260 (Tex. App. 2002) (defining apparent authority).

[11] The fact that a representative from FPS, Robert Babin, met Andy Townend, the co-founder of Seaflex, in late 2001 or early 2002 and had a conversation with Mr. Townend at a trade show in 2005 cannot be considered an attempt to negotiate.  (Townend Affidavit ¶ 4-5.)  The Court presumes, therefore, that the "attempted negotiation" asserted by Plaintiff refers to the offer to negotiate a license stated in the cease and desist letter itself.

process, the Court need not decide whether the cease and desist letter may be attributed to Investments either because of an agency relationship, the Agreement, or the language of the letter.

Even if the Federal Circuit's jurisprudence could be read to allow a licensor to establish minimum contacts based on a cease and desist letter coupled with a non-exclusive license agreement that entailed continuing obligations with the licensee, see supra note 6, jurisdiction would still be lacking in this case.  When the Federal Circuit has found jurisdiction based on a licensing agreement, the agreement has either entailed more obligations than this Agreement requires of Investments, see, e.g., Akro, 45 F.3d at 1548 (agreement required Licensor "to defend and pursue any infringement against" the patent); Breckenridge.  444 F.3d at 1366 (agreement required Licensor to provide marketing and scientific consultation to licensee); id. at 1367 (suggesting that jurisdiction based on a non-exclusive license might be possible if the licensor exercised control over the licensee's sales activities (citing Red Wing Shoe, 148 F.3d at 1357-58), or involved additional contacts with the forum state beyond the obligations established by the license and a cease and desist letter,  see. e.g., Danippon, 142 F.3d at 1271 (in addition to having an exclusive license agreement with a resident and having threatened Plaintiff with litigation, defendant received substantial revenues from its licensee and attempted to negotiate a license with the Plaintiff in the forum state); Genetic Implant, 123 F.3d at 1458 (in addition to having an exclusive agreement with an in-state distributor and having sent cease and desist letters, defendant had engaged in a "program to develop a market in [the forum state], including founding teaching centers in Seattle . . .developing [forum state] customer lists  . . and advertising in publications distributed to potential

[forum state] customers.).  Thus, even if the Federal Circuit might consider jurisdiction proper based on obligations established by a non-exclusive licensing agreement, and even if the cease and desist letter could be attributed to Investments, the Court would not find that Investments had established minimum contacts with the state of Texas.

Investments has no direct contacts with the State of Texas and has not established sufficient contacts with the state by virtue of its non-exclusive license agreement with FPS.  Even if the Court could attribute FPS' cease and desist letter to Investments, jurisdiction would still be improper because sending such a letter and offering to negotiate a license, standing alone, does not establish sufficient minimum contacts with the forum state.   The Court may not, therefore, exercise personal jurisdiction over Investments, and Plaintiff's Motion to Amend to add Investments as a Defendant must be denied.

### B.        Indispensable Party

Because it cannot exercise jurisdiction over Investments, the Court must now determine whether Investments is a necessary and indispensable party to this lawsuit under Federal Rule of Civil Procedure 19.  Whether a party is indispensable to a patent declaratory judgment action is a matter of regional circuit law.   Dainippon, 142 F.3d at 1269.

A party is necessary to an action when, *inter alia*, "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . ."  FED. R. CIV. P. 19(a).  Plaintiff does not dispute that Investments retains a substantial interest in the two patents at issue in this suit.  Whether

a disposition of this action in Investment's absence would entirely impair or impede

Investment's ability to protect its interests in the patent is uncertain.  First of all, although

Defendant argues that it is likely that Plaintiff will eventually assert a claim of patent

non-validity, Plaintiff has thus far only asked the Court for a declaratory judgment of

non-infringement.  It is unclear whether Investments would be collaterally estopped from

asserting an infringement claim against Plaintiff if the Court were to find that Plaintiff

has not infringed the patents.   At least one Circuit has found that a judgment of non-

infringement would not work as collateral estoppel on a patent owner that did not control

or substantially participate in the litigation.  Capri Jewelry Inc. v. Hattie Carnegie Jewelry

Enterprises, Ltd., 539 F.2d 846, 853 (2d Cir. 1976); cf. Farmhand, Inc. v. Anel

Engineering Industries, Inc., 693 F.2d 1140, 1144 (5th Cir. 1982) (noting that "a prior

finding of validity involving a different party and different prior art 'is not binding on

either principles of res judicata or estoppel by judgment'" (citing Johns-Manville Corp. v.

Cement Asbestos Products Co., 428 F.2d 1381, 1382 (5th Cir.1970)).  But cf. Parkson

Corp. v. Andritz Sprout-Bauer, Inc., 866 F.Supp. 773, 775 n.1 (S.D.N.Y. 1994) ("The

courts have expressed some ambivalence about whether a decision concerning issues of

patent validity would have a collateral estoppel effect upon a patent owner who did not

appear in the action."); Suprex Corp. v. Lee Scientific, Inc., 660 F.Supp. 89 (W.D. Pa.

1987) (finding that a patent owner's ability to defend the validity of the patent in later

litigation could be impaired by collateral estoppel).  Nevertheless, even those courts

finding that a patent owner would not be collaterally estopped by a judgment of non-

infringement acknowledge that such a judgment "could at least be damaging as

precedent."  Capri Jewelry Inc., 539 F.2d at 853; see also Farmhand, 693 F.2d at 1144

(acknowledging that "a previous determination of validity is one factor which a court or jury may consider in deciding whether a patent is valid."); General Plywood Corp. v. Georgia-Pacific Corp., 504 F.2d 515, 517 (5th Cir. 1974) (finding, in a case involving patent infringement, that prior decisions finding patent validity and non-infringement were "instructive to some degree on the question of infringement.").  Given the risk that Investments might be collaterally estopped or at least damaged by the precedent set by the judgment in this case, the Court finds that Investments' ability to protect its interests may, as a practical matter, be impaired by a judgment in its absence.

If a necessary party cannot be joined because a court lacks jurisdiction over the party, the court must then "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."  FED. R. CIV. P. 19(b).  In deciding whether a party is indispensable, the Court considers:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

15

Id.  The Fifth Circuit has emphasized that "[t]hese factors are not rigid tests, but rather are guides to the overarching 'equity and good conscience' determination."  Whalen v. Carter, 954 F.2d 1087, 1096 (5th Cir. 1992).[12]

As discussed above, Investments could be prejudiced by a judgment rendered in its absence either by collateral estoppel or by the potentially damaging precedent if Plaintiff should prevail.  Relying on Danippon, Plaintiff counters that this potential prejudice is mitigated by the fact that FPS has manifested an obvious concern over the maintenance of Investments' patents, that FPS and Investments have the same attorney, and that Investments may choose to intervene in the lawsuit.  142 F.3d at 1272. Defendant rightly points out, however, that in Danippon and the cases cited by the Federal Circuit in that decision, the licensee not only manifested a concern over the maintenance of the patents, it also had "total control" over the patent owner or had the "duty" to protect the patent owner's interest.  Id.; see also Dow Chemical Co. v. Exxon Corp.; 139 F.3d 1470, 1479 (Fed.  Cir. 1998) (finding that joinder was not required by Rule 19(b) where Exxon had "both the duty and the capability of protecting" a patent owner's interests).  FPS exercises no such control over Investments nor does it have any clear duty to protect Investments' interests.  Furthermore, the Circuit in Danippon was applying Ninth Circuit precedent that "strongly compel[led]" the conclusion that the out-of-state party was not indispensable where its interests were adequately protected by its

---

[12] Although several district courts have found that a patent owner is an indispensable party in an action regarding validity or infringement of the patent, see, e.g., Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc., 989 F.Supp. 265, 272 n. 4 (D.D.C. 1998); Zumbro, Inc. v. California Natural Products, 861 F.Supp. 773, 783 (D. Minn. 1994); Suprex Corp. v. Lee Scientific Inc., 660 F.Supp. 89, 93-94 (W.D. Pa.1987), Plaintiff has not yet asserted any claim of patent non-validity.  Defendant has pointed to only one case finding that a patent owner is necessarily an indispensable party in a case involving a judgment of non-infringement alone, Tol-O-Matic, Inc. v. Proma Produkt-Und Marketing Gesellschaft, m.b.H., 690 F.Supp. 798, 801 (D. Minn. 1987), and that case does not examine the four factors set forth in Rule 19(b).  Rather than rely on these cases, none of which is controlling, the Court will instead proceed with an independent evaluation of the Rule 19(b) factors.

licensee, and that precedent does not control this Court's decision.  <u>Danippon</u>, 142 F.3d at 1273.  The fact that the parties share an attorney and the fact that Investments may intervene in the case, however, does mitigate the potential prejudice to Defendant to some extent.

The Court's ability to shape relief to avoid any such prejudice, Rule 19(b)'s second factor, is not of much relevance in a declaratory judgment action for non-infringement because the relief "does not depend upon the patentee's presence in court."  <u>Id.</u>  According to Defendant, the third factor, adequacy of the judgment in Investments' absence, militates against Plaintiff because Investments could bring another lawsuit for infringement against Plaintiff.[13]  Plaintiff notes, however, that the Court may fashion full relief in response to Plaintiff's declaratory judgment claims in the absence of Investments.

The fourth factor—whether the plaintiff will have an adequate remedy in face of dismissal—weighs in favor of dismissing or transferring the suit.  Defendants argue that this suit can be adjudicated in the Eastern District of Missouri as part of the infringement suit filed by Investments against Plaintiff.  Defendant also points out, and Plaintiff does not contest, that the Eastern District of Missouri has personal jurisdiction over Plaintiff and venue is proper in that District.  Although this factor does not automatically warrant dismissal of the case, <u>see</u> <u>Danippon</u>, 142 F.3d at 1273,  the availability of an adequate remedy, coupled with the possible prejudice to Investments should the lawsuit proceed in its absence, outweigh the fact that Plaintiff might be afforded an adequate judgment in

---

[13] To the extent this is true, it seems to contradict Defendant's argument that Investments would suffer prejudice from collateral estoppel.

Investment's absence.  The Court holds, therefore, that Investments is an indispensable party to this lawsuit.

Defendants have asked the Court to either dismiss the case or to transfer it.  A district court has the power to transfer a case under 28 U.S.C. § 1406(a) even though it does not have personal jurisdiction over the defendant.  See Goldlawr, Inc. v Heiman, 369 U.S. 463 (1962); Dubin v. U.S., 380 F.2d 813 (5th Cir. 1967).  Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  A district is "'wrong' within the meaning of § 1406 whenever there exists an 'obstacle (to) . . . an expeditious and orderly adjudication' on the merits."  Dubin, 380 F.2d at 815 (citing Goldlawr, 369 U.S. at 466).  Lacking jurisdiction over a defendant in an "otherwise correct venue" is such an obstacle.  Id.; see also In re Carefirst of Maryland, Inc., 305 F.3d 253, 255-56 (4th Cir. 2002) ("[S]ection 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district."); Corke v. Sameiet M.S. Song of Norway, 572 F.2d 77, 80 (2d Cir. 1978) ("[T]he court has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is proper in the district, if a transfer would be in the interest of justice.").   Although the Plaintiff's case was filed first, there is an exception to the general rule favoring the first-filed case where the Court lacks jurisdiction over a necessary and indispensable party.  See Genetech, Inc. v. Eli Lilly Co., 998 F.2d 931, 937-38 (Fed. Cir. 1993), abrogated in part on other grounds by

Wilton v. Seven Falls Co., 517 U.S. 277, 289-90 (1995)  ("There must . . . be sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be . . . absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation . . . .").  Thus, rather than dismiss the suit, in the interest of justice and judicial economy, the Court will instead transfer the case to the Eastern District of Missouri so that it may proceed, if necessary, together with the pending action already before that Court.

## III.     CONCLUSION

The Court cannot exercise personal jurisdiction over Investments.  Plaintiff may not, therefore, add Investments as a defendant to this lawsuit, and Plaintiff's Motion for Leave to Amend Complaint is therefore **DENIED**.  Because the Court finds that Investments is an indispensable party to the lawsuit, Defendant's Motion to Dismiss or Transfer is **GRANTED**.  In the interest of justice and judicial economy, the case is **TRANSFERRED** to the Eastern District of Missouri.

**IT IS SO ORDERED.**

**SIGNED** this 20th day of November, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER
SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND
AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT
ONE BY THE COURT